UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| G&A FAMILY ENTERPRISES, LLC d/b/a SMOKIN' PIG BBQ and GIBSON & ADAMS FAMILY ENTERPRISES, LLC d/b/a SMOKIN' PIG, Georgia Limited Liability Companies,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FAMILY INSURANCE COMPANY, a Wisconsin Insurance Company, and MIDVALE INDEMNITY COMPANY, a Wisconsin Insurance Company,<br><br>Defendants. | CIVIL ACTION NO.<br>1:20-CV-03192-JPB |

## ORDER

This matter is before the Court on American Family Insurance Company and Midvale Indemnity Company's (collectively, "Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 24]. This Court finds as follows:

### ALLEGED FACTS AND PROCEDURAL HISTORY

G&A Family Enterprises, LLC, and Gibson & Adams Enterprises, LLC, (collectively, "Plaintiffs") operate two barbeque restaurants in Georgia—one in Tallapoosa and one in Bowden. [Doc. 16, p. 2]. Defendants are issuers of

business insurance policies.  Plaintiff G&A has a business insurance policy with Defendant American Family.  [Doc. 24-3, p. 4].  Plaintiff Gibson has a business insurance policy with Defendant Midvale.  [Doc. 24-4, p. 1].  Although issued by two different entities, the pertinent language of the two policies is similar.

Relevant to the coverage dispute in this case, both policies contain a "Business Income Loss" provision.  The provision provides that

> [w]e will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'  The suspension must be caused by direct physical loss of or damage to property at the described premises.
>
> …
>
> We will only pay for loss of Business Income that you sustain during the 'period of restoration' and that occurs within 12 consecutive months after the date of direct physical loss or damage.

[Doc. 24-3, p. 15 and Doc. 24-4, pp. 19-20].

In a subsequent definitions section, both policies define "period of restoration" as the time period that begins seventy-two hours after the time of direct physical loss or damage and ends on the earlier of the date when the property should be repaired or when business is resumed at a new permanent location. [Doc. 24-3, p. 32 and Doc. 24-4, pp. 46-47].

In addition to the "Business Income Loss" provision, both policies contain a "Civil Authority" provision. Defendant American Family's policy provides that

> [w]e will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

[Doc. 24-3, p. 17]. Similarly, Defendant Midvale's policy provides that

> [w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage . . .; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

[Doc. 24-4, p. 22]

In addition to the provisions identified above, the insurance policies also contain certain exclusions to coverage. Relevant here, both insurance policies contain a virus or bacteria exclusion. The virus exclusion contained in Defendant

3

American Family's policy provides that "[w]e will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." [Doc. 24-3, p. 48]. Similarly, Defendant Midvale's virus exclusion states that "[w]e will not pay for loss or damage caused directly or indirectly by virus or bacteria." [Doc. 24-4, pp. 30-33]. The policy notes that this exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss" and "whether or not the loss event results in widespread damage or affects a substantial area." Id. at 30.

In early 2020, the United States Government declared COVID-19 to be a public health emergency. [Doc. 16, p. 4]. In an attempt to slow the uncontrolled spread of the virus, many federal, state and local governments took drastic action by implementing or recommending certain restrictions for individuals and businesses. Id. In Georgia specifically, Governor Brian Kemp issued a series of executive orders beginning on March 14, 2020. Id. at 5. Similarly, the counties in which the restaurants are located (Carroll County and Haralson County) also issued executive orders. Id. at 6. Plaintiffs allege that the orders severely curtailed the ability of Plaintiffs to carry on any type of business. Id. at 15. More specifically, Plaintiffs allege that they were not able to operate the restaurants at all for a period

of time. Id. Additionally, Plaintiffs allege that they had to destroy perishable goods and are no longer able to rely on third-party suppliers to provide adequate and sufficient goods. Id. Ultimately, Plaintiffs allege that the various executive orders resulted in a significant loss of revenue.

To recover some of these losses, Plaintiffs filed insurance claims pursuant to the "Business Income Loss" and "Civil Authority" provisions of the policies. After Defendants denied the respective claims, Plaintiffs filed a Complaint in the State Court of Cobb County on June 18, 2020. [Doc. 1-2]. Defendants removed the action to this Court on July 31, 2020. [Doc. 1]. On September 17, 2020, Plaintiffs filed their First Amended Complaint, which contains a single breach of contract claim. [Doc. 16]. Defendants timely moved to dismiss Plaintiffs' First Amended Complaint on October 15, 2020. [Doc. 24].

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999). In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted).

When analyzing a motion to dismiss, a district court may consider documents attached to the complaint. A district court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). Importantly, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [a district court] may consider such a document provided it meets the centrality requirement." Id.

Here, Defendants have attached several documents to their Motion to Dismiss. Such documents include the insurance policies at issue as well as the various executive orders entered in response to the COVID-19 pandemic. Because

these documents are central to Plaintiffs' breach of contract claim and no party has objected to this Court's consideration of them, the Court considers the documents as a part of its analysis below.

## DISCUSSION

In their Motion to Dismiss, Defendants seek to dismiss Plaintiffs' First Amended Complaint for three independent reasons. First, Defendants argue that the "Business Income Loss" provision does not provide coverage in this case because no allegations exist that Plaintiffs suffered a direct physical loss. Second, Defendants argue that the "Civil Authority" provision does not cover Plaintiffs' alleged losses because Plaintiffs failed to allege that the various governmental orders prohibited them from accessing their properties. Third, Defendants argue that both policies contain broad exclusions for viruses that apply to the COVID-19 pandemic. Before turning to the merits, the Court will consider the general principles governing the interpretation of insurance contracts under Georgia law. These principles are necessary, as they inform the analysis that follows.

1. General Principles of Insurance Contracts

Under Georgia law, insurance contracts "are interpreted by ordinary rules of contract construction." Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 498 S.E.2d 492, 494 (Ga. 1998). Contract interpretation requires three steps:

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d 381, 389 (Ga. 2013).

With respect to the first step, "[t]he court [initially] looks to the four corners of the agreement to ascertain the meaning of the contract from the language employed." Brogdon v. Pro Futures Bridge Cap. Fund, L.P., 580 S.E.2d 303, 306 (Ga. Ct. App. 2003). In that analysis, "[w]ords generally [are ascribed] their usual and common signification." O.C.G.A. § 13-2-2(2). "[W]here the language of [the] contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court." Ainsworth v. Perreault, 563 S.E.2d 135, 140–41 (Ga. Ct. App. 2002). See also Triple Eagle Assocs., Inc. v. PBK, Inc., 704 S.E.2d 189, 195–96 (Ga. Ct. App. 2010) (stating that "where the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to ascertain the parties' intent, and is not permitted to strain the construction of a contract, so as to discover an ambiguity") (internal punctuation omitted).

Conversely, "[a]n insurance contract will be deemed ambiguous only if its terms are subject to more than one reasonable interpretation." State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263, 265 (Ga. 2009). In the event of ambiguity, the insurance policy will be "construed liberally against the insurer and most favorably for the insured." Id. Importantly,

> while an ambiguity is to be construed in favor of the insured, "this court may not strain the construction of the policy so as to discovery an ambiguity." In other words, the rule of liberal construction of an insurance policy cannot be used to create an ambiguity where none, in fact, exists.

Id. at 265-66 (internal citation omitted).

2. Direct Physical Loss and the "Business Income Loss" Provision

As previously stated, Plaintiffs allege that Defendants were required to provide coverage for their losses under the "Business Income Loss" provisions. Significantly, both parties agree that for coverage to exist under the "Business Income Loss" provisions, there must be "direct physical loss or damage" to the property that is insured. In their Motion to Dismiss, Defendants argue that Plaintiffs' COVID-19 related losses are not covered by their insurance policies because they have not alleged direct physical loss or physical damage. In response, Plaintiffs contend that the meaning of "direct physical loss or damage" is ambiguous and must be construed in favor of denying the motion to dismiss.

Moreover, Plaintiffs argue that they suffered physical loss because they shut down operations entirely for a lengthy period of time and during this period, Plaintiffs' food and other perishable supplies were wasted.

In <u>AFLAC Inc. v. Chubb & Sons, Inc.</u>, the Georgia Court of Appeals analyzed the meaning of "direct physical loss of, or damage to" contained in an insurance policy. 581 S.E.2d 317, 318-19 (Ga. Ct. App. 2003). The court determined that the words "loss of" and "damage to" make clear "that coverage is predicated upon a change in the insured property resulting from an external event rendering the insured property, initially in a satisfactory condition, unsatisfactory." <u>Id.</u> at 319. The court further held that "[t]he word 'direct' as modifying the word 'physical' means only that the change in the insured property occurred by the action of the fortuitous event triggering coverage." <u>Id.</u> In sum, the court concluded that the term "direct physical loss of, or damage to" in an insurance policy contemplates "an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." <u>Id.</u>

The Eleventh Circuit Court of Appeals has also addressed the definition of direct physical loss. Although <u>Mama Jo's Inc. v. Sparta Insurance Co.</u> involved

10

Florida law, the Eleventh Circuit Court of Appeal's definition of "direct physical loss" in that case did not turn on the interpretation of Florida law, so it is helpful here. 823 F. App'x 868, 879 (11th Cir. 2020). There, the court looked to the plain meaning of the phrase to find that the words "direct" and "physical" modify "loss" and "'impose the requirement that the damage be actual.'" Id. (affirming grant of summary judgment to the insurer because the insured could not demonstrate actual physical loss).

In this case, although the phrase "direct physical loss" is not defined in either policy, the Court finds that its plain and literal meaning (based on certain related definitions in the policies and applicable case law) requires actual, physical damage to the covered premises. This meaning is clear and unambiguous, and the Court therefore ends its inquiry at this step. See Woodmen v. World Life Ins. Soc. v. Etheridge, 154 S.E.2d 369, 372 (Ga. 1967) (reminding courts that "an unambiguous policy requires no construction, and its plain terms must be given full effect even though they are beneficial to the insurer and detrimental to the insured").

The Court now applies the definition of "direct physical loss" to the facts of this case. Here, Plaintiffs have not sufficiently alleged that there was an actual change to the physical condition of the restaurants because of the executive orders.

11

Although Plaintiffs argue that the executive orders resulted in the inability to operate for a specific period of time, the executive orders did not physically change the insured properties. "Every physical element of the dining rooms—the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs—underwent no physical change as a result of the [executive orders]." Henry's Louisiana Grill v. Allied Ins. Co., 495 F. Supp. 3d 1289, 1295 (N.D. Ga. 2020). Simply put, there was no change to the restaurants resulting from an external event that transformed the properties from satisfactory condition to unsatisfactory condition. Significantly, many other courts within the Eleventh Circuit have reached this same conclusion. See, e.g., Karmel Davis & Assocs., Attorneys-at-Law, LLC v. Hartford Fin. Servs. Grp., Inc., No. 1:20-cv-02181, 2021 WL 420372, at *4 (N.D. Ga. Jan. 26, 2021) (dismissing the case because "the 'likely' presence of COVID-19 cannot be regarded as a physical change, as it does not and has not physically altered the insured property" and explaining that "[a]lthough the virus is transmitted through the air and may adhere to surfaces briefly, there is no indication that it causes any sort of physical change to the property it touches"); El Novillo Rest. v. Certain Underwriters at Lloyd's, No. 1:20-cv-21525, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) (collecting cases).

Ultimately, this Court finds that the contract language at issue here is not ambiguous, and because the executive orders did not create a "direct physical loss" of Plaintiffs' properties, the "Business Income Loss" provision does not apply to Plaintiffs' claims. See Henry's Louisiana Grill, 495 F. Supp. 3d at 1296 (holding that allegations of "direct physical loss or damage" as a result of executive orders were insufficient to state a claim for which relief can be granted and recognizing that other courts within the Eleventh Circuit have reached identical results).

3. The "Civil Authority" Provisions

Plaintiffs also allege that Defendants should have provided coverage under the "Civil Authority" provisions in the policies. It is undisputed that both of the "Civil Authority" provisions provide that Defendants will pay for the actual loss of business income when access to the policyholder's property is prohibited by a civil authority because of direct physical loss or damage to another property. In their Motion to Dismiss, Defendants argue that Plaintiffs have not alleged any direct physical loss or damage to any property. Defendants further argue that Plaintiffs failed to allege any action of a civil authority that prohibited access to their properties.

The analysis contained in Henry's Louisiana Grill is instructive.

> Plaintiffs have not pleaded sufficient facts to demonstrate coverage under the Civil Authority provision. The provision

13

>contains several clear conditions precedent for coverage. First, the Plaintiffs have pleaded no facts regarding a civil authority's action that prohibited access to the premises. The Governor's Executive Order had no substantive provisions limiting access to private businesses or their operations. While the Order could be read as "advising" residents to stay home, the Order itself does not represent an action to prohibit access to the described premises. And the Plaintiffs point to no other action by a civil authority that could have prohibited access to their dining rooms at the time of the closure. Second, the Plaintiffs pleaded no facts that the areas "immediately surrounding" the damaged properties were blocked by the civil authority. In fact, the Plaintiffs do not identify any particular property around their premises which was damaged by COVID-19 or had its access restricted by a civil authority.

Id. at 1296-97 (internal citations omitted).

After careful review of Plaintiffs' First Amended Complaint, this Court finds that Plaintiffs have wholly failed to allege that they were prohibited from accessing their restaurants. Moreover, Plaintiffs have not alleged any facts which would show a direct physical loss or damage to any property. Thus, by failing to plead sufficient facts to satisfy several conditions precedent, Plaintiffs cannot claim coverage under the "Civil Authority" provision.

4. <u>The Virus or Bacteria Exclusion</u>

As explained in the preceding sections, Plaintiffs have not alleged sufficient facts to support a claim for coverage under either the "Business Income Loss" provisions or the "Civil Authority" provisions. As such, this Court need not

analyze whether the virus exclusion even applies in this case. Id. at 1297 n.3. In an abundance of caution, however, this Court will nevertheless undertake the analysis.

In their Motion to Dismiss, Defendants contend that the virus exclusions contained in the policies exclude coverage for Plaintiffs' alleged losses. In response, Plaintiffs do not dispute that the virus exclusions bar the claims. Instead, Plaintiffs argue, without citing to any case law, that the virus exclusions render the insurance contract illusory. In other words, Plaintiffs contend that if the virus exclusions are allowed to stand, they will exclude "virtually all risk of loss" and the "policy coverage will cease to be a contract of insurance." [Doc. 25-1, p. 19].

"A policy is considered illusory when it 'purport[s] to offer coverage that inevitably will be defeated by one of the policy's exclusions' or when an exclusion in another part 'completely nullifies the coverage.'" Evanston Ins. Co. v. Littlejohn, No. 1:15CV-897, 2017 WL 6373992, at *6 (N.D. Ga. Sept. 5, 2017). Under Georgia law, "the policy may not offer coverage that is chimerical." Cynergy, LLC v. First Am. Title Ins. Co., 706 F.3d 1321, 1327 (11th Cir. 2013). Stated another way, an insurance policy is only illusory when it results in a complete lack of any policy coverage.

After considering the rules above, this Court finds that the virus exclusions do not render the policies illusory. This is not a situation where the exclusion completely nullifies the coverage. For instance, the policies at issue would still provide coverage for a "Business Income Loss" if the properties were damaged by a fire or a hurricane. Excluding one potential cause of loss does not render coverage illusory when other potential covered causes still exist.

In this case, the virus exclusions, which are unambiguous, bar Plaintiffs' claims based on COVID-19 related losses. Hilco, Inc. v. Hartford Fire Ins. Co., No. 1:20-CV-4514, 2021 WL 1540997, at *2 (N.D. Ga. Apr. 12, 2021). No dispute exists that COVID-19 is a virus and that Plaintiffs have alleged that they have suffered losses because of the executive orders implemented to combat the virus. Here, Plaintiffs claim no losses that were not caused, at least indirectly, by the virus. As such, even if Plaintiffs' claims were covered under the policies, the virus exclusions would apply to bar the claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 24] is **GRANTED**. As such, Plaintiffs' claims are **DISMISSED** with prejudice. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 13th day of May, 2021.

J. P. BOULEE
United States District Judge